## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:20-cv-81717-MIDDLEBROOKS

UNITED STATES OF AMERICA,
*ex rel.*
BRYAN QUESENBERRY,

      **Plaintiffs,**

  **vs.**

PAN AFRICAN INTERCHANGE, LLC, a Florida
Limited Liability Company; and
STANLEY DAMAS, individually and as the Manger
and Owner of PAN AFRICAN INTERCHANGE,
LLC,

      **Defendants.**

### UNITED STATES OF AMERICA'S COMPLAINT IN INTERVENTION
### (JURY TRIAL DEMANDED)

Plaintiff, the United States of America ("United States") through its undersigned counsel, hereby files its Complaint in Intervention against Defendants Pan African Interchange, LLC, a Florida Limited Liability Company, and Stanley Damas, individually and as the Manger and Owner of Pan African Interchange, LLC and represents as follows:

**I.**    **Introduction**

1.    The United States brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

2.    This action arises from false statements and claims that Defendants Pan African Interchange, LLC ("Pan African Interchange") and its Manager and Owner, Stanley Damas ("Damas"), listed in the caption (collectively "Defendants"), knowingly presented to,

or caused to be presented to, the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

      **A.**    **The CARES Act and Paycheck Protection Program**

3.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

4.     The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

5.     Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

6.     On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

7.     Under the PPP, in 2020, eligible businesses could obtain **one** SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

8.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

9.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

10.    After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on | ☐ Yes | ☐ No |
|---|---|---|

<table>
<tr><td>Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and <strong>(4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).</strong></td><td></td><td></td></tr>
</table>

SBA Form 2484 (emphasis added).  Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

**B.   Defendants' Unlawful Acts to Unlawfully Obtain More Than One PPP Loan in 2020**

11.    Defendants knowingly presented and/or made, or caused to be presented and/or made, the false claims and statements at issue, in order to participate in the PPP that SBA administers.

**(1)    Pan African Interchange First PPP Application**

12.    On or about May 20, 2020, on behalf of Pan African Interchange, Damas submitted a PPP application seeking a PPP Loan of $312,000.00 ("Pan African Interchange First PPP Application"). Stanley Damas electronically signed the loan application as Owner and Authorized Representative of Pan African Interchange. The Pan African Interchange First PPP Application was submitted through BlueVine, Processor and Servicer for Celtic Bank and contained various statements Damas certified as true, among which were the following:

- **I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them**.

- **The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program** under Division A, Title 1 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

Pan African Interchange First PPP Application (emphasis supplied). In addition, as the authorized representative of the Applicant, Damas certified on Pan African Interchange's behalf, in "good faith" to other Certifications by initialing his initials "SD" next to each one, including the following:

SD  **During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.**

SD  **I further certify that the information provided in this Application and the information provided in all supporting documents and forms is true and accurate in all material respects**. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1041 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

Pan African Interchange First PPP Application (emphasis supplied).

13.     On or about May 21, 2020, the lender approved the Pan African Interchange First PPP Application, and on the same day, on behalf of Pan African Interchange, Damas signed a PAYCHECK PROTECTION PROGRAM LOAN Section 1102, Keeping American Workers Paid and Employed Act of the CARES Act PROMISSORY NOTE ("Promissory Note for Pan African Interchange First PPP Loan"), that provided among other things, the following Representations and Warranties:

Compliance with Law. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower, its property, and business.

. . .

Borrower has duly executed and delivered this Note. Information is True and Accurate . The information provided in all supporting documents and forms to obtain this Loan is true and accurate in all material respects. The Borrower (and any individual who provided information for the application of this Loan) understands that knowingly making a false statement to obtain this loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

. .

UNDERSIGNED BORROWER ACKNOWLEDGES THAT HE/SHE IS THE **AUTHORIZED REPRESENTATIVE OF THE APPLICANT** AND HAVING READ ALL THE PROVISIONS OF THIS LOAN DOCUMENT AND AGREES TO ITS TERMS

**BY SIGNING THE BORROWER AGREES THAT ALL INFORMATION PROVIDED IN THIS APPLICATION AND ALL SUPPORTING DOCUMENTS AND FORMS TO OBTAIN THIS LOAN ARE TRUE AND ACCURATE IN ALL MATERIAL RESPECTS AND THAT ANY KNOWN FALSE STATEMENTS ARE PUNISHABLE BY FINE, IMPRISONMENT OR BOTH.**

Promissory Note for Pan African Interchange First PPP Loan (emphasis supplied).

14.     Pan African Interchange received, on or about May 22, 2020, a $312,000.00 Paycheck Protection Program Loan from Celtic Bank Corporation ("Pan African Interchange First PPP Loan").

### (2)     Pan African Interchange Second PPP Application

15.     On May 21, 2020, on behalf of Pan African Interchange, Damas submitted a second PPP application for a PPP Loan in the amount of $208,332.00. Stanley Damas signed the loan application as Owner and Authorized Representative of Pan African Interchange ("Pan African Interchange Second PPP Application"). The Pan African Interchange Second

PPP Application was submitted to WebBank and contained various statements Damas

certified as true, among which were the following:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- **The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program** under Division A, Title 1 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

Pan African Interchange Second PPP Application (emphasis added). In addition, as the

authorized representative of the Applicant, Damas certified on Pan African Interchange's

behalf, in "good faith" to other Certifications by initialing his initials "SD" next to each one,

including the following.

SD   **During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.**

SD   **I further certify that the information provided in this Application and the information provided in all supporting documents and forms is true and accurate in all material respects.** I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1041 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

Pan African Interchange Second PPP Application (emphasis supplied).

16.     Pursuant to Pan African Interchange Second PPP Application, Pan African

Interchange received, on or about June 24, 2020, a second PPP Loan in the amount of

$208,332.00 ("Pan African Interchange Second PPP Loan").

17.     In association with the Pan African Interchange Second PPP Loan and after

Pan African had received on May 22, 2020 the Pan African Interchange First PPP Loan, on

behalf of Defendant Pan African Interchange, Defendant Damas, again falsely certified and initialed in "good faith" on June 12, 2020 in the Pan African Interchange Second PPP Application, that

> SD **During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.**

Pan African Interchange Second PPP Application dated June 12, 2020 (emphasis suppled).

18.     Also on June 12, 2020, Damas, as Pan African Interchange's authorized representative, further falsely certified as true in the SBA PPP LOAN AGREEMENT for the Pan African Interchange Second PPP Loan ("Loan Agreement for Pan African Interchange Second PPP Loan"):

> BY SIGNING BELOW (EITHER MANUALLY OR ELECTRONICALLY), YOU, THE UNDERSIGNED:
>
> . . .
>
> (2) **CERTIFY, THAT TO THE BEST OF YOUR KNOWLEDGE, THE INFORMATION PROVIDED RELATING TO THE BORROWER'S LOAN APPLICATION AND THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, INFORMATION RELATING TO THE BORROWER'S BENEFICIAL OWNER(S), IS COMPLETE AND CORRECT** . . .

Loan Agreement for Pan African Interchange Second PPP Loan (emphasis supplied).

### (3)     Defendants' False Certifications

19.     Despite numerous demands and in violation of the PPP program rules and the FCA, Defendants have unlawfully refused to return the second PPP Loan.

20.     Defendants knowingly made false statements and concealed material information from the lenders in order to receive federally-guaranteed PPP funds to which they were not entitled.

8

21.     Defendants knowingly engaged in fraudulent conduct in an attempt to secure federally-guaranteed PPP funds and also knowingly and improperly received and retained PPP assistance even though they were not qualified to do so.

22.     Defendants also knowingly provided false statements to the United States in connection with its investigation of this matter

23.     Defendants' conduct was knowing and material to Defendants' continued eligibility to participate in the Paycheck Protection Program. As a result of Defendants' fraudulent scheme and false representations of PPP eligibility, Defendants received hundreds of thousands of dollars of CARES Act assistance they otherwise would not have received but for Defendants' conduct.

## II.     JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over the United States' claims brought under the FCA, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

25.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in the Southern District of Florida, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

26.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because Pan African Interchange is a Florida limited liability company, does business and is headquartered in Miami-Dade County, all within the Southern District of Florida. Moreover, Stanley Damas resides and does business in Miami-Dade

County within the Southern District of Florida. Furthermore, acts that form the basis of this Complaint occurred in the Southern District of Florida.

**III.   PARTIES**

27.   Plaintiffs are:

a.   The United States, acting on behalf of the U.S. Small Business Administration ("SBA"). The SBA is a federal agency that, among other things, administers the PPP.

b.   Bryan Quesenberry ("Relator") is a resident of Utah. He filed the original *qui tam* complaint in this action on behalf of the United States of America, the real party in interest. Mr. Quesenberry is admitted to practice law in the State of Utah and appears pro se in this case.

28.   Defendant Pan African Interchange is a Florida limited liability company. At times material hereto, Pan African Interchange's principal place of business is located in Miami-Dade County, Florida. At times material hereto, Pan African Interchange or an entity related thereto, held itself out to be "a leading global energy commodities merchant and infrastructure asset investor."

29.   Defendant Stanley Damas was, at times material hereto, the owner and Manager of Pan African Interchange. He is a resident of and does business in Miami-Dade County, Florida. Pan African Interchange utilizes as its business address the same address as Damas' homestead.

**IV.   The Paycheck Protection Program**

30.   Congress enacted the PPP on March 27, 2020, as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), to provide emergency financial support

to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses.

31.     Under the PPP, eligible businesses could obtain one SBA guaranteed PPP loan prior to December 31, 2020. Borrowers were required to spend loan proceeds for employee compensation, business rent or mortgage, and other specified business expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

32.     Section 1102 of the Act temporarily permits SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

33.     The CARES Act was intended to provide relief to America's small businesses expeditiously and gives lenders delegated authority to process loan applications for PPP funding.

34.     SBA allowed lenders to rely on borrowers' certifications regarding program eligibility and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

35.     On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. *See*, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-

Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. *Id.*

36. With respect to the PPP, the April 28, 2020, Interim Final Rule provided Clarification Regarding Eligible Businesses. *See*, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at 23451.

a. ***Is a*** *hedge fund or* ***private equity firm eligible for a PPP loan?***

**No. Hedge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan. The Administrator, in consultation with the Secretary, does not believe that Congress intended for these types of businesses, which are generally ineligible for section 7(a) loans under existing SBA regulations, to obtain PPP financing.[1]**

---

[1] SBA guidance, SOP 50 10 5(K), Subpart B, Ch. 2, Para. III.A.18, states speculative businesses are not eligible:

III. INELIGIBLE TYPES OF BUSINESSES

18. Speculation (13 CFR § 120.110 (s))
a. Speculative businesses are not eligible. This prohibits loans to an Applicant for:
i. The sole purpose of purchasing and holding an item until the market price increases; or
ii. Engaging in a risky business for the chance of an unusually large profit.
b. Speculative businesses include:
. . .
ii. Dealing in stocks, bonds, commodity futures, and other financial instruments;
. . .
iv. Research and Development; . . .

SOP 50 10 5(K), Subpart B, Ch. 2, Para. III.A.18  Speculative Businesses.

    **b.** *Do the SBA affiliation rules prohibit a portfolio company of a private equity fund from being eligible for a PPP loan?*

    Borrowers must apply the affiliation rules that appear in 13 CFR 121.301(f), as set forth in the Second PPP Interim Final Rule (85 FR 20817). The affiliation rules apply to private equity-owned businesses in the same manner as any other business subject to outside ownership or control. However, in addition to applying any applicable affiliation rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

37.    PPP applicants, including Pan African Interchange and Damas, were required to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, Form 1099 Returns, and documentation of income and expenses. PPP applicants that were existing in 2019 generally calculated an amount to borrow by aggregating payroll costs from the previous 12 months (of 2019) for employees whose principal place of residence is the United States. Annual employee salaries are capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

38.    Each PPP applicant, including Pan African Interchange, and Damas as the representative of Pan African Interchange, was required to certify on its PPP application, among other things that:

    **During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program**.

    **I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects**. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by

13

> imprisonment of not more than five years and/or a fine of up to $250,000;
> under 15 USC 645 by imprisonment of not more than two years and/or a
> fine of not more than $5,000; and, if submitted to a federally insured
> institution, under 18 USC 1014 by imprisonment of not more than thirty
> years and/or a fine of not more than $1,000,000.

PPP Application Certifications (emphasis added).

**V.    The False Claims Act**

39.    The United States alleges that, from at least May 20, 2020 through the time of the filing of this Complaint in Intervention, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that Pan African Interchange was eligible to receive such PPP loans. Moreover, Defendants' false claims caused Celtic Bank to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Pan African Interchange's general eligibility for the PPP loan, on which the SBA relied and paid to Celtic Bank as of February 8, 2022, the Total SBA Commitment of $316,684.27 (consisting of $312,000.00 (Principal Purchased) + $4,684.27 (Total Interest Accrued as of payment date)).

40.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government.

See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading.

41.     31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42.     The scope of a false or fraudulent claim is to be broadly construed.  As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

43.     A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted,[2] plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). *See* 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.     Pan African Interchange's and Stanley Damas's PPP Applications

### A.     Pan African Interchange and Stanley Damas' PPP Application through BlueVine and Celtic Bank

44.     On or about May 20, 2020, on behalf of Pan African Interchange, LLC, Stanley Damas submitted a Paycheck Protection Program application through BlueVine seeking a PPP Loan of $312,000.00 ("Pan African Interchange First PPP Application"). During the course of the United States' investigation of this action, in response to Interrogatory 7 of the United States' Civil Investigative Demand No. 21-224 ("CID"), Damas stated under oath

---

[2]    Civil penalties in False Claims Act cases were increased pursuant to Federal Civil Penalties Inflation Adjustment Improvements Act of 2015 (FCPIAIA), Bipartisan Budget Act of 2015, P.L. 114-74 (Nov. 2, 2015) ("BBA"). For civil penalties assessed after May 9, 2022, whose associated violations occurred after November 2, 2015, the civil monetary penalties provided by law within the jurisdiction of the Department of Justice were adjusted as set forth in the column below.

| U.S.C. citation | Name/description | CFR citation | DOJ penalty assessed after May 9, 2022 |
|---|---|---|---|
| 31 U.S.C. 3729(a) | False Claims Act; 3 Violations | 28 CFR 85.3(a)(9 | Minimum $12,537.00 - Maximum $25,076.00 |

that: "Pan African Exchange, LLC submitted one loan application on 5/20/2020 to Celtic Bank." Blue Vine records evidence that the Pan African Interchange First PPP Application was accessed through the following IP Addresses: IP Addr: 73.138.46.221 (at various times between 7/20/2020 and 1/20/2021); IP Addr: 98.254.74.116 (at various times between 5/20/2020 and 5/22/2020 (including electronic signature through IP Addr: 98.254.74.116) and 1/28/2021 and 3/12/2021); and, IP Addr: 87.101.93.180 (on 3/24/2021). BlueVine records have the title: https://skywalker.bluevine.com/client/798070 User: PAN AFRICAN INTERCHANGE LLC (lmontes31@yahoo.com). The copy of the Pan African Interchange First PPP Application that Damas produced in response the United States' CID denotes that it was electronically signed through IP Addr: 98.254.74.116. For the loan application, Damas used the email address: lmontes31@yahoo.com, which Damas represented to be his personal email address and the only email address he utilizes.

45.     In the foregoing Pan African First PPP Application submitted to Celtic Bank through BlueVine, Damas held himself out as Owner and Authorized Representative of Pan African Interchange, LLC and stated as true and accurate each of the Pan African First PPP Application's Statements and Certifications set forth in Paragraphs 12, 13, 37, and 38 above. In response to Interrogatory 8 of the United States' CID, Damas stated:

> Stanley Damas, President and CEO of Pan African Exchange, LLC prepared and submitted the only Paycheck Protection Program loan application submitted for the Company on 5/20/2020. He was assisted by Yves St. Surin of SmarTax, 12229 Pembroke Rd, Pembroke Pines, FL 33025, (954) 374-9244.

46.     On or about May 21, 2020, the Pan African Interchange First PPP Application was approved and Pan African Interchange received on or about May 22, 2020, a $312,000.00 PPP Loan from Celtic Bank Corporation ("Pan African-First PPP Loan"). In response to

Interrogatory 9 (a) through 9 (d) of the CID, Damas stated that on May 22, 2020, "$312,000 was received [by Pan African Interchange, LLC from Celtic Bank] per the application submitted by Pan African Exchange, LLC on 5/20/2020 through BlueVine (see attached application.)"

47.     The SBA paid a total of $15,600.00 in processing fees to Celtic Bank Corporation in connection with the Pan African Interchange First PPP Loan disbursed to Pan African Interchange.

48.     As discussed further below, Pan African Interchange was ineligible to apply for or receive the $312,000 Pan African Interchange First PPP Loan. Defendants have failed and refused to pay back Pan African Interchange First PPP Loan, the interest earned thereon or the processing fees paid by SBA.

**B.     Pan African Interchange and Stanley Damas' PPP Application through WebBank**

49.     Pursuant to a second PPP application submitted on May 21, 2020, Pan African Interchange sought a PPP Loan of $208,332.00. This second application was electronically signed under the name Stanley Damas as Owner and Authorized Representative of Pan African Interchange, LLC ("Pan African Interchange Second PPP Application") and was submitted to WebBank. In the Pan African Interchange Second PPP Application, the signatory, Stanley Damas, stated as true and accurate each of the PPP Application's Statements and Certifications set forth in Paragraphs 15, 16, 17, 18, 37, and 38 above.

50.     WebBank records establish that the Pan African Interchange Second PPP Application was accessed through the following IP Address: IP Addr: 73.138.46.221 on 5/21/2020 at 3:50:26 PM and viewed again through the same IP Address on 6/12/2020 at 4:09:21 PM and 4:24:38 PM. This is the very same IP address Damas used in the Pan African

Interchange First PPP Application to obtain the $312,000 Pan African Interchange First PPP Loan. WebBank records show that in the Pan African Interchange Second PPP Application, Stanley Damas is identified as the Owner of the applicant, Pan African Interchange LLC, and further identify Damas' date of birth, phone number and email address as lmontes31@yahoo.com, which  Damas admitted is his personal email address and the only email address he utilizes..

51.     Pursuant to the Pan African Interchange Second PPP Application, Pan African Interchange, LLC, received on or about June 24, 2020, a second Paycheck Protection Program Loan in the amount of $ 208,332.00, the Promissory Note for which Stanley Damas viewed and signed on June 12, 2020, using the following IP Address: IP Addr: 73.138.46.221 at 4:09:21 PM and 4:24:38 PM. ("Pan African Interchange Second PPP Loan"). In the Note for the $208,332.00 Pan African Interchange Second PPP Loan, Damas falsely certified as true, among other statements that

> "Unless as otherwise permitted under applicable law as permitted under the CARES ACT, the Paycheck Protection Program, or any subsequent amendment to these programs, during the period beginning on February 15, 2020 and ending on December 31, 2020, **Borrower has not applied for, and has not and will not receive another loan under the program**."

52.     SBA paid a total of $3,583.31 in processing fees to WebBank in connection with the Pan African Second PPP Loan disbursed to Pan African Interchange, LLC.

53.     The certifications that Damas made in the Pan African Interchange Second PPP Application and also in the Note attendant to the Pan African Interchange Second PPP Loan, were false in as much as Damas had during the period beginning on February 15, 2020, and ending on December 31, 2020, applied for, and received the $312,000.00 Pan African Interchange First PPP Loan under the CARES Act through Celtic Bank.

54.     In response to Interrogatory 9 (a) of the United States' CID, Damas stated under oath that "[a] second unsolicited loan amount that Pan African Exchange, LLC (sic) did not apply for was wired to Pan African Exchange, LLC (sic) on 6/24/2020 as referenced in correspondence dated May 10, 2021."

55.     As of the date of this Complaint in Intervention, the $208,332.00 Pan African Interchange Second PPP Loan and $3,583.31 in fees the SBA paid and interest thereon, has not been repaid as required by law and repeated demands.

56.     Damas has provided to the Government false statements he certified to be true under penalty of perjury.

### C.     Pan African Interchange and Stanley Damas' Failure to Fully Repay $312,000 the Pan African First PPP Loan, Despite Celtic Bank's Demand

57.     On September 29, 2020, Celtic Bank made demand upon Pan African Interchange, LLC that it repay the full $312,000.00 balance on the Pan African Interchange First PPP Loan, together with all accrued interest and fees as of the date of payoff. In its September 29, 2020 communication to Stanley Damas, Celtic Bank stated:

> This Notice is to inform you that you may be in violation of federal law. Our records show that you may have received funding for more than one loan under the Paycheck Protection Program.
>
> Celtic Bank hereby demands that the full balance of $312,000.00 be paid to cure the PPP loan held with Celtic Bank or our Partner Lenders, together with all accrued interest and fees; as of the date of payoff. Please contact Celtic Bank Collections at pppayoffs@celticbank.com to obtain a payoff amount and instructions, discuss how you can return a loan, or confirm via documentational proof that you have paid back a PPP loan or that you only obtained one loan.
>
> While we understand that in some cases businesses were told to apply several times in order to get a PPP Loan, you may only receive one PPP Loan and must return one of the loans in full to avoid significant penalties.

58.     As of the date of the filing of this Complaint in Intervention, despite Celtic Bank's demand, the full $312,000.00 balance of the Pan African First PPP Loan, together with all accrued interest and fees as of the date of payoff, has not been repaid.

### D.     Pan African Interchange and Stanley Damas' Failure to Fully Repay the Pan African Second PPP Loan, Despite United States' Repeated Demands

59.     The United States has made multiple requests that Damas and Pan African Interchange repay the Pan African Second PPP Loan.

60.     Neither Pan African Interchange nor Stanley Damas was entitled to the Pan African Second PPP Loan, and they should have repaid the $208,332.00 Pan African Second PPP Loan back immediately upon receipt.

61.     Despite the United States' numerous requests and Defendants' assurances that the $208,332.00 Pan African Interchange Second PPP Loan was on deposit in Pan African Interchange's bank account and had not been used and would be paid back, the $208,332.00 Pan African Second PPP Loan has not been paid back as of the date of the filing of this Complaint in Intervention. The $3,583.31 in processing fees SBA paid to WebBank and interest accruing on the $208,332.00 Pan African Second PPP Loan have also not been paid back as required by law and the United States' demands.

### E.     Pan African Interchange Was Not Eligible to Apply for or Receive *Any* PPP Loan

62.     At times material here, Pan African Interchange provides a description of its services on its website (www.panafricaninterchange.com) and describes its services as follows:

> **PAN African Commodities International (sic) is a leading global energy commodities merchant and infrastructure asset investor**. As a

21

trader, **PAN deploys capital** on a proprietary basis **in the physical and financial commodity markets**, providing the Company with market insights and access. **As a strategic investor** and developer, PAN leverages its market expertise, operations capabilities, and industry knowledge **to invest in, and develop, select commodity infrastructure assets**. **This fully integrated platform has generated strong risk-adjusted returns for our investors since our formation**. Agricultural commodities include corn, soybeans, wheat, rice, cocoa, coffee, cotton, and sugar etc.

*See also* https://www.panafricaninterchange.com//about-us (as of May 28, 2021). (Emphasis supplied).

63.     Pan African Interchange's webpage as of May 28, 2021 also stated:

"PANAFRICAN INTERCHANGE LLC's success has come through focusing on its strengths: **experience and knowledge in futures and options on futures**. Formed in 2018, PANAFRICAN INTERCHANGE LLC is a privately owned **Introducing Broker and Commodity Pool Operator**. . . . **Our professional** and competitive **services include electronic trading, call-in trading, and full-service trading** depending on the client's preferences, needs and experience level." (Emphasis supplied). See https://www.panafricaninterchange.com//portfolio.

64.     On May 28, 2021, on the news page of Pan African Interchange's website, Pan African stated: "Our mission at PAN is to provide traders the best access to the global markets needed to accomplish their financial goals, with fast, efficient and friendly service. PAN is a member of the National Futures Association and is registered with the Commodity Futures Trading Commission as an Introducing Broker (IB) and a Commodity Pool Operator (CPO)."

65.     Pan African Interchange, LLC's North American Industry Classification System ("NAICS") Code is 541990, and its Standard Industrial Classification ("SIC") Code is 7389. The NAICS Code is a wide-ranging Code and includes, among other things, 541990 Business brokers (except real estate brokers) and Commodity inspection services. https://www.naics.com/naics-code-description/?code=541990. SIC Code 7389 is entitled "Industry: 7389—Business Services, Not Elsewhere Classified." The Code incorporates

various types of business services, brokers, financial services, brokers' services. *See* https://www.naics.com/sic-industry-description/?code=7389. Pan African Interchange, LLC has also used NAICS Code 523930 which relates to Investment Advice and SIC Code 6282 also relating to Investment Advice.

66.   The Pan African Interchange First PPP Application and the Pan African Interchange Second PPP Application that Damas prepared and executed do not identify the business in which Pan African Interchange was involved.

67.   It was Pan African Interchange's responsibility to ensure that it was eligible to apply for a PPP Loan.

68.   As noted in Paragraphs 35 and 36 above, the SBA's April 28, 2020, Interim Rule provided Clarification Regarding Eligible Businesses for PPP loans, stating that "hedge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan." *See* Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at 23451.

69.   Based upon Pan African Interchange's own description of Pan African Interchange as a "leading global energy **commodities merchant** and infrastructure *asset investor*", an entity that "deploys capital on a proprietary basis in the physical and financial commodity markets," and "a strategic investor," together with SBA eligibility rules in place when through Damas, Pan African Interchange applied through BlueVine for the loan Celtic Bank granted, it appears that Pan African Interchange, was engaged in investment or speculation and as such, was ineligible for such loan.

70.   Despite several demands, as of the date of the filing of this Complaint in Intervention, Defendants have failed to pay back the $312,000.00 Pan African Interchange

First PPP Loan, together with interest and the $15,600.00 in processing fees SBA paid to Celtic Bank Corporation in connection with Pan African First PPP Loan disbursed to Pan African Interchange, because Pan African Interchange was ineligible to apply for a PPP Loan. Likewise, the $208,332.00 Pan African Second PPP Loan, the $3,583.31 in processing fees SBA paid to WebBank, and interest, must be paid back for the reasons set forth above and also because Pan African Interchange was ineligible under the SBA's PPP Loan regulations to apply for and receive the $208,332.00 Pan African Second PPP Loan after it received the first loan.

71.      Damas and Pan African Interchange knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States and SBA.

72.      Damas' and Pan African Interchange's false claims are actionable under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B).

## VII.   CAUSES OF ACTION

### Count I: False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))

73.      The United States re-alleges and incorporates in this Count I, Paragraphs 1 through 72 of this Complaint in Intervention.

74.      Defendants Pan African Interchange and Stanley Damas knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A), specifically, that Pan African was eligible for a PPP loan and that it had not applied for and had not and would not receive another loan under the Paycheck Protection Program.

75.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each violation.

### Count II:  False Statements (31 U.S.C. § 3729(a)(1)(B))

76.     The United States re-alleges and incorporates in this Count II, Paragraphs 1 through 72 of this Complaint in Intervention.

77.     Defendants Pan African Interchange and Stanley Damas knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B).

78.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each violation.

### Count III:  Reverse False Claims (31 U.S.C. § 3729(a)(1)(G))

79.     The United States re-alleges and incorporates in this Count III, Paragraphs 1 through 72 of this Complaint in Intervention.

80.     Defendants Pan African Interchange and Stanley Damas knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G).

81.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each violation.

## Count IV: Unjust Enrichment

82.     In the alternative, the United States re-alleges and incorporates in this Count IV, Paragraphs 1 through 72 of this Complaint in Intervention.

83.     By reason of the foregoing conduct and violation of federal law, Defendants Pan African Interchange and Stanley Damas were unjustly enriched and are liable to account for and pay such amounts, which are to be determined at trial, to the United States.

## Count V: Payment by Mistake

84.     The United States re-alleges and incorporates in this Count V, Paragraphs 1 through 72 of this Complaint in Intervention.

85.     By reason of the foregoing conduct of the Defendants Pan African Interchange and Stanley Damas, lenders acting on behalf of the SBA and the United States made payments under mistake of fact.

86.     As a result of these payments made by lenders acting on behalf of the SBA and the United States under mistake of fact, the United States has sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

87.     Wherefore, Plaintiff, the United States, demands judgment in its favor and against Defendants Pan African Interchange, LLC and Stanley Damas as follows:

    a.   Under Counts I, II and III (FCA), for an amount of the United States'

damages, trebled as required by law, plus such civil penalties in an amount between $12,537.00 and $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper;

b. Alternatively, under Count IV (Unjust Enrichment), for an accounting and the amount by which Defendants were unjustly enriched, plus interest and costs, and expenses, and all such further relief as may be just and proper;

c. Alternatively, under Count V (Payment by Mistake), for an accounting and the lenders acting on behalf of the SBA and the United States paid to the Defendants, plus interest and costs, and expenses, and all such further relief as may be just and proper;

d. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

**THE UNITED STATES DEMANDS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

**Dated: May 17, 2022**                    **Respectfully submitted,**

**JUAN ANTONIO GONZALEZ**
**UNITED STATES ATTORNEY**

_____

**James A. Weinkle (Florida Bar No. 0710891)**
**Assistant United States Attorney**
Email: James.Weinkle@usdoj.gov
**Office of the U.S. Attorney-Southern District of Florida**
Alto Lee Adams Federal Courthouse
101 S. U.S. Highway One, Suite 3100
Fort Pierce, FL 34950
Telephone: 772-293-0945 (Direct)

**Counsel for United States of America**

27

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on May 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  **James A. Weinkle**
     Assistant United States Attorney

**SERVICE LIST**

*United States of America, ex rel. Bryan Quesenberry v.*
*Pan African Interchange, LLC and Stanley Damas,*
**Case No. 9:20-cv-81717-MIDDLEBROOKS**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| **James A. Weinkle**<br>**Assistant United States Attorney**<br>**Office of the United States Attorney**<br>**Southern District of Florida**<br>Alto Lee Adams Federal Courthouse<br>101 S. U.S. Highway One, Suite 3100<br>Fort Pierce, FL 34950<br><br>Email: James.Weinkle@usdoj.gov<br><br>*Counsel for the United States of America* | **Bryan Quesenberry, Esq.**<br>197 East 100 North, Suite A<br>Payson, UT 84651<br><br>Email: jbq.esq@gmail.com<br><br>Pro Se *Relator* |

Defendants will be served in accordance with the provisions in the Florida Rules of Civil Procedure